IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD DRICKS, | § § | CAUSE NO. |
| *Plaintiff* | § § § | |
| v. | § § | |
| CITY OF TEXAS CITY, | § § | JURY DEMANDED |
| *Defendants*. | § § § § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

The Plaintiff, RICHARD DRICKS, by and through his attorneys, Terrence B. Robinson and Claudia Casas, files this Original Complaint against Defendants City of Texas City (hereinafter "Defendant Texas City"), and for causes of action against them, would show the Court as follows:

### I.   NATURE OF ACTION

1. Plaintiff demands a jury for any and all issues triable to a jury.

2. Plaintiff now files this action for relief arising under Title VII of the Civil Rights Act of 1964, and 42 USC § 1983, regarding the violation of the laws of the United States and for retaliation against Plaintiff for exercising his First Amendment rights. This is also an action for declaratory judgment pursuant to 28 U.S.C. §2201 to declare the rights and other legal relations between the parties. The Plaintiff is also seeking equitable and injunctive relief. This action seeks compensatory, back and front pay, punitive, liquidated and actual damages, declaratory and

injunctive relief, any lawful interest, and attorney's fees, costs and expenses due to Defendant Texas City's unlawful discrimination and retaliation against Plaintiff, as well as its pervasive and discriminatory employment policies, practices and/or procedures.

## II.    JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343.

4. Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff, at all times while an employee of Defendant Texas City resided in this judicial district.

## III.    PARTIES

5. Plaintiff is a Jewish male residing in La Marque Texas, Galveston County. At all times relevant hereto, Plaintiff was employed by Defendant Texas City.

6. Defendant Texas City is a home-rule city organized under the laws of Texas and incorporated in Galveston County, Texas. Pursuant to Tex. Civ. Prac. & Rem. Code Section 17.024 (b), the city may be served with citation through its Mayor, Dedrick Johnson, Sr., or its Mayor's Assistant, Susan Chapa, at the City's offices located at 1801 9th Avenue N, Texas City 77590.

7. This Court's jurisdiction is not precluded by immunity in that the City of Texas's governmental immunity to suit and liability is specifically, clearly, and unambiguously waived and abolished with respect to Plaintiff's claims for relief.

8. This Court's jurisdiction is not precluded by immunity in that the City of Texas has no governmental immunity to suit and/or liability against Plaintiff's claims for depriving Plaintiff of liberty, property, privileges and immunities and disenfranchise Plaintiff without the due course of the law, in direct violation of Article I, Section 19 of the Texas Constitution.

## IV.   ADMINISTRATIVE PROCEDURES

9. On November 9, 2021, Plaintiff filed charges of discrimination against the Defendant with the Houston Division of the Equal Employment Opportunity Commission, EEOC Charge No. 460-2021-04589.

10. Via Certified Mail dated February 7, 2022, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission, for the EEOC Charge 460-2021-04589. Plaintiff files this complaint within 90 days of receiving the notice of right to sue. All conditions precedent to filing this lawsuit have been performed or have occurred.

## V.   SPOLIATION

11. Plaintiff hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including investigation reports, statements, photographs, videotapes, audiotapes, recordings, business records, financial records, bills, estimates, invoices, checks, measurements, equipment, correspondence, memoranda, files, facsimiles, email, voice mail, text messages, and any electronic image, digital data, or information related to the referenced incident and allegations herein. Failure to maintain such items will constitute "spoliation" of the evidence.

## VI.   FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference all of the allegations set forth above.

13. Plaintiff was hired as a Police Officer by Defendant Texas City on or about March 21, 2016. Prior to the activity complained of herein Plaintiff did not have any negative personnel documentation, write-ups or disciplinary action taken against him. Moreover, Plaintiff's job performance was satisfactory and above.

14. Soon after he was hired, Plaintiff encountered a strong prejudice in the actions of his supervisors and Defendant's policy towards Christian practices at his workplace. For Plaintiff as

a Jewish man, the office was a hostile environment, where pictures of religious Christian images and messages were openly displayed in common areas, like a St. Michael poster.

15. From 2016 up until Plaintiff's termination, Defendant Texas City sponsored Christmas door decorating contests every December. Plaintiff's picture was placed on his supervisors' door without Plaintiff's consent and used as decoration for the Christian holiday.

16. Plaintiff also witnessed Defendant promoting the Christian holiday of Easter, and placed pressure on Police officers to participate in a Christian event named "Gospel Fest," which made Plaintiff felt harassed and threatened as a Jewish Police officer.

17. On January 1, 2017, Plaintiff was promoted and assigned to report to Sgt. T. Jose Saldivar (hereinafter "Sgt. Saldivar") as his direct supervisor. With this promotion, Plaintiff began to see escalating levels of harrasment and discrimination towards him. For example, Sgt. Saldivar mockingly mispronounced Plaintiff's name as "Dirks", which would result in his coworkers laughing and belittling Plaintiff as well.

18. Then on May 14, 2017, Plaintiff witnessed a more egregious display of favoritism towards the non-Jewish officers. Plaintiff witnessed the Police Department present awards to officers willing to pray and appear in the Crosspoint Community Church while on duty, making Plaintiff feel further pressure to participate in Christian activities with the clear preference demonstrated to Christian faith practicing officers.

19. The hostility towards Plaintiff became worse as time continued, and on December 26, 2017, Defendant Texas City made a social media post of Plaintiff receiving an award, but offensively spelled his name incorrectly to say "Dicks." Even after a third party made note of the mistake and Plaintiff himself made a complaint about the inappropriate post, Defendant Texas City took no corrective action.

20. The discrimination against Plaintiff escalated further on January 25, 2018, when Defendant Texas City denied Plaintiff the opportunity to receive evidence collection training, while non-Jewish police officers were allowed to receive this training.

21. Plaintiff was also forced to participate and promote the Christian faith, when he was ordered by Defendant Texas City to pose for photographs for the Lady of Fatima Church on January 29, 2018.

22. During 2018, Plaintiff was left in the same position for more than year, while his non-Jewish coworkers continued to be promoted.

23. Then on February 10, 2019, Plaintiff continued experiencing escalating harassment in the form of pictures circulated around the Police Department, where Plaintiff had his face photo shopped into a derogatory police related poster in which Plaintiff was wearing a Nazi style eagle insignia cap. As a Jewish man, Plaintiff was deeply disturbed by the Nazi imagery and felt threatened by his coworkers' usage of it.

24. Throughout 2019, cross shaped magnets began to be maintained on the break room refrigerator, making Plaintiff feel even more harassed and uncomfortable by Defendant's actions in promoting a work environment that was hostile towards non-Christian religions.

25. In December 2019, the hostility towards Plaintiff became even more egregious and grotesque when fecal matter themed Christmas decorations were placed on Plaintiff's assigned door, displaying an image of Plaintiff's coworkers defecating. This action of harrasment publicly humiliated Plaintiff before his coworkers and office.

26. Plaintiff was further singled out from his non-Jewish coworkers in the form of his door tag. While the other non-Jewish police officers had permanent name tags, Plaintiff's name tag was

reduced to a yellow post-it note. The rest of 2019 continued with forced Christian holiday participation from police officers and promotion of local Christian churches.

27.     Then on March 26, 2020, Plaintiff was sent a derogatory picture of himself in the training room. This photograph was taken without his consent and depicted him yawning with a penis photoshopped into Plaintiff's open mouth.

28.     Throughout 2020, Plaintiff faced continuing harrasment and was pressured to partake in Christian activities at his workplace, like Christmas activities and donation activities with the Connection Church. Additionally, Plaintiff was pressured to pray and participate in the Crosspoint Community Church and to conducted S.W.A.T. demonstration at the Greater Barbour's Chapel Baptist Church.

29.     There also continued to be daily harrasment and derogatory language targeted at Plaintiff because of his Jewish religion. The employees in his department, constantly made offensive "Jew Jokes" directed at Plaintiff without facing any repercussions by their supervisors.

30.     In or around 2020, an investigation was initiated and conducted by Plaintiff's supervisor Lt. Creel regarding religiously insensitive comments made against Plaintiff during a shift Lt. Creel directly observed. As a result, Plaintiff was interviewed and provided his testimony regarding the incident and the discriminatory environment he had been suffering. He was informed action would be taken against Officer Montgomery; the employee responsible for making the harassing religious comments against Plaintiff.

31.     Despite Lt. Creel's assurances to Plaintiff, Officer Montgomery was never written up for his offensive language and harassment towards Plaintiff following this incident and no further action was taken.

32. In 2020, Plaintiff initiated a complaint to Human Resources alleging he was being discriminated against and treated differently than his non-Jewish coworkers. Plaintiff was being required to do additional work that was typically distributed among the members of the patrol evenly. This uneven distribution only occurred during Plaintiff's shift, while the other three shifts handled the workload evenly among the officers. Despite Plaintiff's complaint being forwarded to the Police Department, Plaintiff's complaint was dismissed, and the additional work continued to be required of him.

33. On March 29, 2021, while Plaintiff was on duty, an incident occurred with a citizen wherein Plaintiff's use of force during an arrest was called into question. At 3 p.m. that same day, Sgt. Mickey House reviewed the body camera video, and informed Plaintiff his actions were justified and that he did not see any problem.

34. Later that day, Lt. William Creed approved a report by Eric Vela stating Plaintiff committed no violations and Veronica Delagarza's supplement stating no violations occurred. Sgt. Mickey House also reviewed and approved the use of force report and supplementation submitted by Plaintiff and Delagarza that no violations were reported.

35. On March 29, 2021, at 8 p.m., Ms. Serenity Grubbs, the citizen involved in the incident, submitted an incomplete citizen's complaint against Plaintiff to Sgt. David Heckard.

36. On March 30, 2021, Cpt. Rex Spottedbear verbally informed Plaintiff his actions were justified. Additionally, Shelby Webb submits a supplement for the incident, where no violations were reported. Sgt. Carlos Alcocer approved Shelby Webb's supplement of no violations reported.

37. On April 1, 2021, Sgt. David Heckard approved Plaintiff's report which stated no violations were reported.

38. On April 3, 2021, Lt. Saldivar informed Plaintiff that the complaint was not properly signed and was therefore invalid.

39. On April 6, 2021, A.D.A. Jennifer Ott notified Stanton that the District Attorney reviewed the citizen complaint and would not be requesting criminal investigation into the complaint against Plaintiff. As the Texas City Police Department's use of force Policy mirrors the State of Texas' laws on use of force, a violation of the use of force policy would also be a violation of Texas law requiring the District Attorney's office to take action.

40. On April 27, 2021, the risk analysis Board found all the actions in citizen's complaint against Plaintiff justified and within policy.

41. On April 29, 2021, Ms. Jess Colwell informed Plaintiff that Joe Stanton was placing Plaintiff on administrative leave.

42. Later that day, Jess Colwell sent Plaintiff a second email with the signed memo regarding the administrative leave. After Plaintiff received and reviewed the memo explaining how the investigation had been conducted, he saw the department had failed to follow the correct policies and held Plaintiff to a different standard compared to his non-Jewish coworkers.

43. Policy I-11.04 section G subsection 2 attachment 103, required members of the Police Department to report any violation of Policy or law they become aware of at any time. Sargent House, Sargeant Alcocer, Sargent Heckard, Sargent Macik, Lt. Johnson, Cpt. R. Spottedbear, Officer A. Patterson, Officer M Kelemen, Officer M. Schanzer, Officer C. Land, and Assistant District Attorney Jennifer Ott reviewed and approved Plaintiff's report and use of force documentation on March 29, 2021 and made no report of the violation at that time.

44. One of the violations committed by the police department was the alleged citizen complaint was not notarized or witnessed by a police officer as policy require. Other countless contradictions,

false statements, investigate inadequacies, and policy violations were in investigator's statement. Including an invalid complaint in an investigation is a violation of Policy and had not been allowed to be used in any investigation against non-Jewish officers.

45.     During the incident Plaintiff followed correct protocol for active and passive resistance. The City ignored policy procedures, attempted to misrepresent evidence in the investigation and held Plaintiff to a different standard compared to non-Jewish officers.

46.     On May 6, 2021, Plaintiff met with Human Resources Director, Jennifer Price (hereinafter Ms. Price") and informed her of the policy violations and the discrimination Plaintiff had been subjected to during the investigation. Ms. Price declined to accept Plaintiff's complaint and advised Plaintiff to give the complaint to his union attorney.

47.     On May 7, 2021, Plaintiff emailed Jess Colwell with his complaint about the contradictions, false statements, and discrimination policy violations that had taken place during Plaintiff's investigation.

48.     On May 7, 2021, Plaintiff also submitted his discrimination complaint to Sgt. Mickey House, Sgt. Carlos Alcocer, and Lt. Manuel Johnson concerning the policy violations committed against Plaintiff during the investigation. An additional email was sent to Cpt. Rex Spottedbear of Plaintiff's complaint by lt. Manuel Johnson.

49.     On May 11, 2021, Jess Colwell stated he had found no merit to Plaintiff's discrimination complaint.

50.     On May 11, 2021, Plaintiff informed Jess Colwell he would be escalating his complaint to Joe Stanton. As Jess Colwell refused to investigate Plaintiff's complaint, Plaintiff then sent his discrimination complaint to Joe Stanton later that day.

51. On May 14, 2021, Joe Stanton responded to Plaintiff's complaint by dismissing it and stating that he found no merit in the discrimination complaint.

52. On May 14, 2021, a predetermination hearing took place with Plaintiff, his attorney, Joe Stanton, Jess Colwell ,and city Attorney Kyle Dickson. During this hearing, Plaintiff witnessed further discriminatory action against him and a refusal for the policy violations to be rectified.

53. Therefore, on May 26, 2021, Plaintiff made a second complaint of discrimination and sent it to Sgt. Mickey House, Sgt. Carlos Alcocer, and Lt. Manuel Johnson. Lt. Manuel Johnson then sent Plaintiff's complaint to Cpt. Rex Spottedbear.

54. The next day on May 27, Plaintiff sent his second complaint of discrimination to Jess Colwell, Joe Stanton.

55. On June 28, 2021, Plaintiff requested FMLA for upcoming childbirth, and received approval for September 19, 2021.

56. On August 9, 2021, Plaintiff once again contacted Human Resources, as his previous requests for an update on his complaint of discrimination had been ignored. Plaintiff informed the Human Resource Directory that the discrimination he had faced was sufficient for an EEOC complaint.

57. On August 19, 2021, Plaintiff began the EEOC complaint via the online inquiry due to Defendant's lack of investigation into his discrimination complaint.

58. Plaintiff waited for his administrative leave to end and communication from Defendant to return to work. However, on September 3, 2021, instead of being notified of his return to work, Defendant Joe Stanton issued Plaintiff the notice of indefinite suspension and termination.

59. On September 3, 2021, understanding this latest action of termination to be nothing more than further discrimination and retaliation for his complaints, Plaintiff responded to Joe Stanton's

email requesting an update status on his discriminatory complaint. Plaintiff also went to city hall to Human Resources but was told Jennifer Price was unavailable. He proceeded to email Jennifer Price requesting the status of his discrimination complaint. Jennifer Price informed Plaintiff that his discrimination complaint to Human Resources is not being investigated by her office or anyone else. Furthermore, Jennifer Price stated she was instructed not to do anything with Plaintiff's complaint. Other non-Jewish employees were not treated like this, nor had their complaints ignored like Plaintiff.

60. On September 8, 2021, Plaintiff was emailed by Tim Herd to return his equipment, which Plaintiff returned on the following day.

61. On September 10, 2021, Plaintiff made a fourth discrimination complaint to Sgt. Randle Johnston, and a fifth complaint on September 17, 2021, to Lt. Manuel Johnson.

62. On November 9, 2021, Plaintiff filed an EEOC charge of discrimination against Defendant.

63. At all times relevant hereto, Defendants acted, or failed to act, by and through its employees, agents, workmen, and supervisors. At all times relevant hereto, Defendant Texas City was an employer.

64. At all times material hereto, Defendants acted or failed to act through its authorized agents, servants, workmen and employees who were at all times then and there acting within the course and scope of their authority and employment.

65. The acts and failures to act complained of herein only occurred because Defendants, as a matter of custom, policy, and/or practice, intentionally and deliberately failed to adequately train, supervise, discipline, or otherwise direct its management and supervisors concerning employment discrimination, and as a further matter of custom, policy and/or practice intentionally and deliberately failed to put in place, implement and/or establish management policies and

procedures that would impact fairly upon all its employees, regardless of their religion, thereby causing, encouraging, fostering and fomenting the Defendants to engage in the unlawful and illegal conduct described herein.

66. Defendants are policy makers of Defendant Texas City and were purportedly implementing the policies of Defendant Texas City when committing the illegal acts complained of herein.

67. Further, if such policies are not, in fact written, each of the Defendants, as applicable policymakers, were implementing the policies of Defendant Texas City in accord with the customs and practices of Defendant Texas City.

68. Defendants' illegal conduct toward Plaintiff, in violation of federal law, has caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

69. Plaintiff has been severely damaged, economically, physically, and emotionally, as a direct result of the violations complained of herein, and Plaintiff hereby asserts a claim for damages (actual and consequential) and other relief as provided for under 42 USC § 1983 and other federal laws.

70. Plaintiff should be awarded his reasonable and necessary attorneys' fees incurred in relation to the foregoing as allowed by applicable law.

## VII. CAUSES OF ACTION

### I. FIRST CAUSE OF ACTION-Religious Discrimination under Title VII

71. Plaintiff hereby incorporates and re-alleges each and every paragraph of the facts.

72. Defendants religiously discriminated against Plaintiff, as described above, in violation of his rights under 42 U.S.C. 2000e.

73. Plaintiff was a member of a protected class based on his religion

74. Plaintiff was qualified for the position he held at Texas City Police Department.

75. Plaintiff suffered an adverse employment action, among others - he was terminated from his position because he was a member of the protected class.

76. Similarly situated non-Jewish officers were treated more favorably under similar circumstances. Defendants and subjected to a hostile work environment where he was scrutinized to a higher level than his non- Jewish coworkers and berated and humiliated before him peers by his supervisor.

77. Defendant acted with actual malice or with reckless disregard to Plaintiff's federally protected rights.

78. Defendant's action caused Plaintiff damages.

### *II. SECOND CAUSE OF ACTION*- **Hostile Work Environment in Violation of Title VII due to Plaintiff's religion.**

79. Plaintiff hereby incorporates and re-alleges each and every paragraph of the facts.

80. Plaintiff was placed in a hostile work environment based on his religion, as described above, in violation of his rights under the 42 U.S.C. 2000e. Defendants knew or should have known of the religious harassment and hostile environment yet failed to take prompt remedial action.

81. Since 2019, Plaintiff was subjected to a workplace where Christian imagery was displayed openly on common work areas, police officers were pressured and often required to participate in Christian practices and volunteer at the Crosspoint Community Church.

### *III. THIRD CAUSE OF ACTION*- **Race Discrimination under Title VII**

82. Plaintiff hereby incorporates and re-alleges each and every paragraph of the facts.

83. Defendants religiously discriminated against Plaintiff, as described above, in violation of his rights under 42 U.S.C. 2000e.

84. Plaintiff was a member of a protected class based on his race

85. Plaintiff was qualified for the position he held at Texas City Police Department.

86. Plaintiff suffered an adverse employment action- he was not given the same rights during an investigation as similarly situated non-Jewish officers, and ultimately terminated from his position because he was a member of the protected class.

87. Defendant acted with actual malice or with reckless disregard to Plaintiff's federally protected rights.

88. Defendant's action caused Plaintiff damages.

### *IV. FOURTH CAUSE OF ACTION*- **Hostile Work Environment in Violation of Title VII due to Plaintiff's religion.**

89. Plaintiff hereby incorporates and re-alleges each and every paragraph of the facts.

90. Plaintiff was placed in a hostile work environment based on his religion, as described above, in violation of his rights under the 42 U.S.C. 2000e. Since 2019, Plaintiff was subjected to a workplace where Cristian imagery was displayed openly on common work areas, police officers were pressured and often required to participate in Christian practices and volunteer at the Crosspoint Community Church.

91. Defendant knew or should have known of the religious harassment against Plaintiff yet failed to take prompt remedial action.

### *V. FIFTH CAUSE OF ACTION*- **Section 1983 Claim Against Local Government body defendants based on unlawful official policy, practice, or Custom.**

92. Plaintiff hereby incorporates and re-alleges each and every paragraph of the facts.

93. Defendant Stanton acted under color of state law, when he acted in the performance of official duties of a Police Sargent in the Texas City police department.

94. Defendant's acts deprived Plaintiff of his particular rights under the laws of the United States as explained above. Defendant deprived Plaintiff's right to be a person of Jewish race and religion and retain his employment.

95. Defendant Stanton acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the Defendant Texas City. Defendant Texas City had adopted a policy of rewarding and pressuring police officers to participated in Christian activities, which discriminated against people of the Jewish race.

96. The Defendant's official policy or widespread or longstanding practice of custom caused the deprivation of the plaintiff's rights by Defendant Stanton; that is, Defendant Texas City's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

## *VI. SIXTH CAUSE OF ACTION* - **RETALIATION UNDER 42 U.S.C. §2000e**

97. Plaintiff incorporates the preceding paragraphs herein for all purposes.

98. Defendant's actions as explained above constitute retaliation under 42 U.S.C. § 2000e *et. seq*

99. Plaintiff engaged in a protected activity—he complained about the unlawful treatment he was enduring by Defendants because of his membership in a protected class. No remedial action was taken.

100. Plaintiff was subjected to further disparate treatment and ultimately terminated in retaliation for engaging in protected activities under 42 U.S.C. § 2000e.

101. Defendant acted with actual malice or with reckless disregard to Plaintiff's federally protected rights.

102. Defendant's actions caused Plaintiff damages.

## VII. SEVENTH CAUSE OF ACTION- RETALIATION UNDER 42 U.S.C. 1983

103. Plaintiff incorporates the preceding paragraphs herein for all purposes.

104. Defendant's actions as explained above constitute retaliation under 42 U.S.C. § 1983.

105. Plaintiff engaged in a protected activity—he complained about the unlawful treatment he was enduring by Defendants because of his membership in a protected class. No remedial action was taken.

106. Plaintiff was terminated in retaliation for engaging in protected activities under 42 U.S.C. 1983.

107. Defendant acted with actual malice or with reckless disregard to Plaintiff's federally protected rights.

108. Defendant's actions caused Plaintiff damages, including punitive damages.

## VIII. DAMAGES

109. Plaintiff sustained damages as a result of the actions and/or omissions of Defendant described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

110. Additionally, as a result of Defendant's above-referenced actions and/or omissions, Plaintiff was required to retain counsel to protect and enforce his legal rights. Accordingly, Plaintiff also seeks compensation for his attorneys' fees, pre-judgment and post judgment interest, out-of-pocket expenses, expert fees and costs of Court she will have incurred in this action.

111. Plaintiff seeks monetary damages in excess of $200,000 but no more than $1,000,000.

## IX.   JURY DEMAND

112. Plaintiff respectfully requests a trial by jury on all issues to be tried in this matter.

## X.   PRAYER

For the reasons set forth above, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for:

a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to actual and compensatory damages, punitive damages, including lost wages and benefits in the past and future in an amount within the jurisdictional limits of the Court.

b. Mental anguish and pain and suffering that he continues to suffer and will suffer.

c. Reasonable attorney's fees as allowed by law, with conditional awards in the event of appeal;

d. Prejudgment interest at the highest rate permitted by law; Post-judgment interest from the judgment until paid at the highest rate permitted by law;

e. Out of pocket expenses, expert fees, Costs of Court; and

f. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully submitted,
TB Robinson Law Group, PLLC

_____
Terrence B. Robinson
SD Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Claudia Casas
Texas Bar No.24110850
Email: CCasas@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**